

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

August 5, 1947

Hon. L. A. Woods
State Superintendent of Public Instruction
Department of Education
Austin, Texas

Attention: Hon. T. M. Trimble,
First Assistant          Opinion No. V-328

Re: Interpretation of
tax levy provi-
sions of Acts
1947, 50th Legis-
lature, R. S.,
Art. I, Sec. 2,
1st paragraph,
concerning the
eligibility of
school districts
to State aid.

Dear Sir:

We acknowledge your letter dated July 17, 1947, wherein you request an opinion of this office concerning the interpretation of Acts 1947, 50th Legislature, H. B. No. 295, Article I, Section 2, relative to equalization aid for public schools. The specific questions submitted in said letter are quoted as follows:

"1. Does a school district comply with Article I, Section 2 of H.B. No. 295, which has not lowered the valuation on its taxable property and has a 50¢ tax for local maintenance purposes?

"2. Can a school district be eligible for equalization aid, which district has not lowered the valuation on its taxable property but has reduced its local maintenance tax in order to service a bond issue, as long as the local maintenance tax is not lowered below the 50¢ minimum?

"3. Does the following quotation from Article I, Section 2 of H. B. No. 295, which

reads as follows - 'income for the current year from local maintenance taxes is equal to or in excess of the highest . . .' mean that a school district which has lowered its valuation must increase its maintenance tax in order to secure a local maintenance income equal to or in excess of the highest per annum income which the school district has collected in either of the two years immediately preceding?"

Section 2 of Article I, H. B. 295, provides, in part:

"Sec. 2. Tax Levy. No school district shall be eligible to receive any type of aid authorized under the provisions of this Act unless it shall be providing for the annual support of its schools by voting, levying and collecting for the current school year a local maintenance school tax of not less than fifty cents (50¢) on the One Hundred Dollars ($100) of property valuation in the entire district. The property valuation shall not be less than said property is valued for State and County purposes. The income from such a maintenance tax in excess of the required fifty cents (50¢) maintenance tax must first be used to retire indebtedness, if any, in the Local and Equalization (Rural Aid) School Funds. After the indebtedness in these Funds, if any, has been retired, the income from this maintenance tax in excess of the required fifty cents (50¢) maintenance tax may be used at the discretion of the local school authorities of the district for any lawful school purpose except increasing or supplementing any teachers or administrative salaries. Any or all maintenance tax above fifty cents (50¢) may not be included in the calculation of need for aid. . . . No school district shall be eligible to receive any type of aid authorized under the provisions of this Act unless it is currently assessing taxes on the highest valuation it has used within the previous two (2) years for levying its local school taxes except when it can be shown to the State Department of Education and Legislative Accountant

that a lower valuation is due to actual
loss of property or whose income for the
current year from local maintenance taxes
is equal to or in excess of the highest
per annum income from such source in the
two-year period immediately preceding.

            "   .   .   ."

The first requirement of a school district
desiring to qualify for State aid under the tax levy
provisions of H. B. 295, is that it provide for the
annual support of its schools by a local maintenance
tax of not less than 50¢ on the $100.00 property valu-
ation of the entire district, which property valuation
shall not be less than said property is valued for
State and county purposes.  Section 2, above quoted,
specifically provides that after retirement of any in-
debtedness any income from a local maintenance tax
which is in excess of the 50¢ requirement of the Act
may be used at the discretion of the school district
authorities for any lawful school purpose except in-
creasing or supplementing teachers or administrative
salaries, and may not be included in the calculation
of need for aid.

The term "local maintenance school tax" as
used in Section 2 of this Act, means, and was intended
to mean, that local school tax voted or levied and
collected for local maintenance or local operating pur-
poses as distinguished from any local tax voted or
levied and collected for the payment of school bond
obligations.  The primary purpose behind H. B. 295
seems clearly to be for the aiding of those school dis-
tricts needing financial assistance in the support and
operation of their school program when and after a dis-
trict needing such aid has first attempted to finance
its own school program or operation by voting or levy-
ing and collecting a local maintenance tax of at least
the 50¢ required under H. B. 295.  The Act, we believe,
contemplates the use of any local school tax in excess
of the minimum required 50¢ local maintenance tax for
financing the building or repair of the district's
school buildings or facilities.  Thus, if a school dis-
trict has voted and levied a specific local maintenance
tax of 50¢ or more on its $100.00 valuations to be used
in the support or operation of its local school program,
for purposes other than bond payments, the district is
eligible for aid, other requirements of the Act having
been met.

Where a district has by an election authorized the levy and collection of a maximum local school tax for local school purposes, a portion of which may be levied for local maintenance or operational purposes and a portion of which tax may be levied for school bond purposes, then if the portion levied in the current year for local maintenance or operational purposes is not less than the 50¢ local maintenance tax required under the Act, the district is eligible for State aid, other requirements of Section 2 and of the Act having been met.

By way of illustration, suppose a school district has authorized a maximum school tax of 50¢. Later it develops that the district needs a new school building or other facilities necessitating the issuance of school bonds. The district votes the bonds and provides that the service and retirement thereof shall be paid by a levy against the maximum 50¢ school tax previously authorized. Suppose further the levy necessary to service said bond issue is 10¢. The maximum local school tax being 50¢, the proper levying authorities would have to levy for bond purposes a 10¢ bond tax, and consequently a local maintenance or operational tax to the extent of 40¢ only could be levied. Under our interpretation of Section 2 of Article I of said Act, this school district would not be eligible for State aid, and would not be eligible thereunder unless and until it has voted to increase its maximum school tax to 60¢ to take care of its bond levy of 10¢. Whenever, therefore, by reason of bonded indebtedness of a school district, the bond tax levy of the district occasions a reduction or levy of its local maintenance tax to a tax rate or levy of less than the 50¢ minimum local maintenance tax requirement of Section 2, Article I of said Act, the district is ineligible for State aid.

In addition to the minimum 50¢ local maintenance tax requirement of said Section 2 above discussed, there is a further or second tax levy requirement or qualification which a school district must meet in order to establish its eligibility for State aid. The school district must be currently assessing taxes on the highest valuation it has used within the previous two years for levying its local school taxes, except when it can be shown that a lower valuation is due to actual loss of property. Assuming for the moment that a school district seeking State aid under this Act has been in existence as a lawfully created and functioning school district for the two years previous to the year for which it is making

application for aid, (although, indeed, the Act does not preclude or prohibit any newly created common, independent, consolidated, or rural high school district from applying and showing eligibility for State aid), and assume that the highest valuation which it has used for school tax purposes in the two years in question was $300,000.00, then to be eligible under this Act, it must be assessing its current school taxes on that highest valuation, $300,000.00, or a higher valuation occasioned by increase of property in the district. Certainly there is nothing in the Act, nor may an intention be construed therefrom, to prohibit the raising of the tax valuations of the district if the true market values of the taxable property therein warrants such a raise by the proper valuation authorities. Again, under the exception clause above noted, if the assumed district's valuation for the current year is shown to be less than $300,000.00, it still would be eligible for State aid, other conditions of the Act having been met, if it can show that the lower valuation is due to actual loss of taxable property in the district.

There is yet another exception to this second requirement (that a school district seeking aid must show that it is currently assessing taxes on the highest valuation it has used within the previous two years for levying its local school taxes). Under this exception, if the school district can show that its income for the current year from local maintenance taxes is equal to or is in excess of the highest per annum income from such source in the two year period immediately preceding the year for which it makes application for State aid, other provisions of the Act having been met, it is eligible for aid. We interpret the provisions of this exception to allow a school district, otherwise eligible for State aid under the Act, to assess and levy its local school taxes for the current year on a lower valuation than the highest valuation that it has used within the previous two years prior to the year it makes application for State aid, provided it can show that its income from local maintenance taxes for the current year is equal to or in excess of the highest per annum local maintenance tax income in the two-year period immediately preceding the year for which it makes its application.

By way of illustration, where a school district's highest valuation during the two years prior to

the year it made application for State aid under H.B.
295 was $300,000.00, and its highest income from local
maintenance taxes voted, levied and collected during
any one of those two years was $1,500.00, then the
district desiring to establish its eligibility under
H. B. 295, may have lowered its property valuation for
school tax purposes in the current year for which it
seeks aid, for example, to $250,000.00, provided it
votes or levies a local maintenance tax rate for the
current year sufficient to show that the local main-
tenance taxes collectible for the current year will
produce an income from that source equal or in excess
of $1,500.00, and provided the current year property
valuation of the school district shall not be less than
said property is valued for State and county purposes.

In accordance with the above discussion con-
cerning the interpretation of Section 2, Article I, of
Acts 1947, 50th Legislature, H. B. 295, it is our opin-
ion that the three specific questions submitted should
be answered each in the affirmative.

## SUMMARY

Under Acts 1947, 50th Leg., R. S., H.B.
295, Art. I, Sec. 2, the first paragraph:

1.  Where a school district which has
not lowered the valuation on its taxable
property for the current year in which it
makes its application for State aid, is
currently assessing taxes on the highest
valuation it has used within the two years
previous to the year for which it seeks aid
under this Bill, and has a 50¢ tax for lo-
cal maintenance or operational purposes,
said school district is eligible for State
aid, other provisions of the Act having been
met.

2.  A school district which has not
lowered the valuation on its taxable prop-
erty, is currently assessing taxes on the
highest valuation it has used within the
two years preceding the year for which it
seeks State aid under this Bill, may reduce
its local maintenance tax in order to ser-
vice a bond issue, as long as the local
maintenance tax for the current year is not

lowered below the 50¢ minimum required in this Bill, and will be eligible for State aid, all other provisions of the Act having been met.

3.  To be eligible for State aid under this Bill, a school district which has voluntarily lowered the valuation of its taxable property for the current year, must increase its local maintenance tax rate sufficiently to show that local maintenance taxes collectible for the year for which it is seeking State aid will produce an income equal to or in excess of the highest per annum local maintenance tax income in the two year period immediately preceding the year for which it makes its application, all other provisions of the Act having been met.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By  *Chester E. Ollison*

Chester E. Ollison
Assistant

CEO:jt:djm

APPROVED:

*Price Daniel*
ATTORNEY GENERAL